EXHIBIT 1

**FILED**
**7/9/2024 8:31 AM**
**ERIN CARTWRIGHT WEINSTEIN**
**Clerk of the Circuit Court**
**Lake County, Illinois**

**IN THE CIRCUIT COURT OF LAKE COUNTY, ILLINOIS**
**NINETEENTH JUDICIAL CIRCUIT**

| | |
|---|---|
| DIANA MORALES, on behalf of herself and all others similarly situated, | Case No. 2024LA00000497 |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| VERIFF INC., | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff Diana Morales ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint for violations of 15 ILCS 335/14D (the "Illinois Identification Card Act" or "IICA") and 625 ILCS 5/6-117.1 (the "Illinois Driver's License Act" or "IDLA") against Defendant Veriff Inc. ("Veriff" or "Defendant"). Plaintiff makes the following allegations pursuant to her counsel's investigation and based upon information and belief, except as to allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF ACTION

1. Veriff is a software-as-a-service provider that helps its clients to, *inter alia*, verify people's identities and ages across said clients' websites, Android applications, and iOS applications (i.e., through the Veriff iOS, Android, mobile web, and web SDK or API).[1] Veriff does so using a photo-based identity document, a selfie, and machine learning and/or artificial

---

[1] https://www.veriff.com/product/biometric-authentication

NOTICE
PURSUANT TO LCR - 2-2.14
THIS CASE IS HEREBY SET FOR AN INITIAL CASE MANAGEMENT CONFERENCE
IN COURTROOM ___c201___ ON
___8.29.24___ AT ___0900a___ A.M./P.M.
FAILURE TO APPEAR MAY RESULT IN THE CASE BEING DISMISSED OR
AN ORDER OF DEFAULT BEING ENTERED.

intelligence algorithms.[2]

2.       The process is simple: A user takes a photo of their identity document and submits a selfie.  Then, "[t]he data is securely sent to Veriff and [its] AI-powered identity verification technology provides a decision in a matter of seconds based on the identity checks [a] business requires."[3]  For example, "Veriff can determine if a session or user is real or a spoof attempt, [with] … Veriff's liveness detection"[4]; Veriff can complete "[b]iometric analysis" to "confirm that a user is who they say they are"[5]; Veriff can "confirm that [] users live where they say they live"[6]; and "Veriff's Age Validation solution enables [a] business to seamlessly confirm whether or not users are above a minimum age threshold."[7]

3.       Veriff thus uses information obtained from Illinois identification cards and driver's licenses ("Information") to "identify or prove the age of the holder of the card, or in the course of [] commercial transaction[s]" (i.e., onboarding, authentication, identification, and/or age verification).  *See* 15 ILCS 335/14D(a); 625 ILCS 5/6-117.1(a).  Such use is in compliance with the law, and Plaintiff does not challenge it.

4.       However, Defendant runs afoul of the IICA and IDLA because Defendant uses Information not only for the discrete onboarding, authentication, identification, and/or age verification transactions of particular identification card and license holders ("Class Members"),

---

[2]   *See, e.g.,* https://www.veriff.com/product/identity-verification;   https://www.veriff.com/product/biometric-authentication; https://www.veriff.com/product/age-estimation; https://www.veriff.com/.

[3] https://www.veriff.com/product/identity-verification.

[4] *Id.*

[5] *Id.*

[6] https://www.veriff.com/product/proof-of-address.

[7] https://www.veriff.com/product/age-validation.

but also for a separate, undisclosed reason: to improve Veriff's own products and services. Specifically, Defendant utilizes Class Members' Information as "training data"[8] for its machine learning and/or artificial intelligence algorithms – a use for which Class Members did not give their express permission, and a use allowing Defendant to realize significant cost-savings.[9]

5.      Both the IICA and IDLA prohibit such use, each stating: "Information obtained … may not be used for purposes unrelated to the transaction in which it was obtained[.]"  15 ILCS 335/14D(a); 625 ILCS 5/6-117.1(a).

6.      Thus, Plaintiff brings this action to prevent Defendant from further violating the privacy rights of Illinois residents, and to recover statutory damages for Defendant's unauthorized use of their Illinois identification cards and driver's licenses Information, in violation of the foregoing statutes.

## PARTIES

7.      Plaintiff Diana Morales is, and has been at all relevant times, a resident of Round Lake Park, Illinois, in Lake County.  While in Illinois, in or around July 2023, Plaintiff uploaded photographs of her Illinois driver's license and her face, via Defendant's software.

8.      Plaintiff Morales provided her driver's license for a discrete onboarding, authentication, identification, and/or age verification transaction – specifically, to become a verified user of Roblox (one of Defendant's many clients).  After the information obtained from Plaintiff's license was used to identify her, the course of her commercial transaction was

---

[8] *See* https://learn.g2.com/training-data ("[T]raining data builds the machine learning model. It teaches what the expected output looks like. The model analyzes the dataset repeatedly to deeply understand its characteristics and adjust itself for better performance.").

[9] *See* https://hackernoon.com/machine-learning-costs-price-factors-and-real-world-estimates ("[A] study by Dimensional Research shows that, on average, ML projects need around 100,000 data samples to perform well. … Generating 100,000 data points via Amazon's Mechanical Turk, for example, can cost you around $70,000.").

complete. Nonetheless, Defendant used Plaintiff's Information for purposes unrelated to the transaction in which it was obtained – improving Defendant's own products and services, by employing Plaintiff's Information as "training data" for Defendant's machine learning and/or artificial intelligence algorithms. Veriff never requested – nor did Plaintiff ever provide – consent to use her license for this purpose, which was wholly unrelated to her transaction. Indeed, Defendant's product and service improvement was not necessary or required for Plaintiff Morales' discrete transaction whatsoever.

9. Defendant Veriff Inc. is a Delaware corporation with its principal place of business at 110 Wall Street, New York, NY 10005. Defendant targets individuals whom it knows to reside in Illinois (based on the information obtained from their Illinois identification cards and driver's licenses).

## JURISDICTION AND VENUE

10. The Court has personal jurisdiction over Defendant because the Illinois identification cards and Illinois driver's licenses that give rise to this lawsuit were provided to Defendant in Illinois. Defendant thus fed information obtained from Class Members' Illinois identification cards, as "training data," to Defendant's machine learning and/or artificial intelligence algorithms in Illinois. Further, Defendant does significant business in Illinois and has purposefully availed itself of the privilege of doing business in Illinois. Specifically, Defendant deliberately exploited the Illinois market by targeting individuals whom Defendant knew to reside in Illinois (based on the information obtained from their Illinois identification cards and driver's licenses). Defendant consciously designed its software as to be usable in Illinois.[10] And the transactions giving rise to this action arise out of or relate to Defendant's

---

[10] Defendants chose to forego implementing geo-fencing and/or geo-blocking features for its software to prevent Class Members' access. *See, e.g.,* https://stackoverflow.com/questions/43738391/appstore-geo-restrict-app-to-specific-

business in Illinois.

11.     Venue is proper in this County pursuant to 735 ILCS 5/2-102(a) because Defendant does substantial business in this County and a substantial part of the events giving rise to Plaintiff's claims took place here.  Plaintiff's Information was obtained and fed, as "training data," to Defendant's machine learning and/or artificial intelligence algorithms here.

## LEGAL AND FACTUAL BACKGROUND

### A.     Overview of Veriff

12.     According to Defendant's website, Veriff "use[s] machine learning and artificial intelligence"[11] to analyze individuals' identification documents and selfie photos to conduct identity, biometric, and age verification.[12]  Thus, Veriff helps clients maintain compliance with regulatory requirements (i.e., know your customer, anti-money laundering, etc.), deter fraud, and onboard and authenticate customers.[13]  Veriff's many clients have integrated Defendant's solutions (i.e., the Veriff iOS, Android, mobile web, and web SDK or API)[14] into their respective web, Android, and iOS digital offerings.

13.     Within such clients' web, Android, and iOS services, Veriff uses "information []

---

usa-states ("I want to publish an iOS application which should be available in specific USA states only. . . . The solution I could implement is to use each state's longitude and latitude to determine geofencing areas."); https://developer.apple.com/documentation/corelocation/monitoring_the_user_s_proximity_to_geographic_regions ("[G]eofencing[] is a way for your app to be alerted when the user enters or exits a geographical region."); https://developer.android.com/develop/sensors-and-location/location/geofencing ("Geofencing combines awareness of the user's current location with awareness of the user's proximity to locations that may be of interest.").

[11] https://www.veriff.com/identity-verification/learn/what-is-identity-verification.

[12] *See, e.g.*, https://www.veriff.com/product/identity-verification; https://www.veriff.com/product/biometric-authentication; https://www.veriff.com/product/age-estimation; https://www.veriff.com/product/age-validation; https://www.veriff.com/product/proof-of-address.

[13] https://www.veriff.com/.

[14] https://www.veriff.com/product/biometric-authentication.

obtained from [] identification card[s]" and "from [] driver[s'] license[s]" to "identify or prove the age of the holder of the card, or in the course of [] commercial transaction[s.]" *See* 15 ILCS 335/14D(a); 625 ILCS 5/6-117.1(a). These onboarding, authentication, identification, and/or age verification transactions proceed as follows.

14. An Illinoisan using a Veriff client's website, iOS app, or Android app is prompted by Veriff to begin the identity verification process by submitting to Veriff photos of their "identification card issued by the Secretary of State" and/or "driver's license." 15 ILCS 335/14D(a); 625 ILCS 5/6-117.1(a).

  

15. An Illinoisan then submits a selfie photo of their face, and the system completes image quality, document data, and biometrics checks. After, Veriff provides a result indicating whether the verification was successful or if further action is required.

 

### B.    IICA and IDLA

16.     The legislative history of 15 ILCS 335/14D (the Illinois Identification Card Act, or "IICA") and 625 ILCS 5/6-117.1 (the Illinois Driver's License Act, or "IDLA") – which were set out by the 94th General Assembly in the same bill, SB2283 (approved by the Governor on June 20, 2006)[15] – makes clear that Defendant's conduct is violative.  Per then-Illinois House of Representatives member Sara Feigenholtz, one of the co-sponsors of SB2283, the IICA and IDLA were "an initiative of Secretary of State, Jesse White's"[16] – whose "office received complaints from people who were concerned their ID information was being misused[.]"[17]

17.     A press release issued by the Office of the Illinois Secretary of State on this topic

---

[15]https://www.ilga.gov/legislation/fulltext.asp?DocName=&SessionId=50&GA=94&DocTypeId=SB&DocNum=2283&GAID=8&LegID=22908&SpecSess=&Session=.

[16] https://www.ilga.gov/House/transcripts/Htrans94/09400015.pdf at 59.  *See also* https://www.ilga.gov/Senate/transcripts/Strans94/09400044.pdf at 12.

[17]https://www.chicagotribune.com/2005/02/11/bill-would-stop-bars-from-taking-id-info/ (cleaned up).

makes clear: "Because the driver's license has become the most used form of identification, it is important that we take extra steps in protecting Illinois consumers. … People should feel that when they are asked to show their license or ID, that's the end of their transaction."[18]

18.     Further, eight days after the Governor signed SB2283, the Office of the Illinois Secretary of State issued another press release[19], which states, *inter alia*:

> Legislation initiated by Secretary of State Jesse White aimed at preventing businesses from misusing information obtained from a patrons' Illinois driver's license and identification card was signed into law by Governor Rod Blagojevich.
>
> "I want to commend Governor Blagojevich and the members of the General Assembly for helping establish this new law that will further protect the personal information of Illinois citizens," said White. "Because the driver's license has become the most used form of identification, it is important that we take extra steps to protect Illinois consumers."
>
> … White said the new law is a necessary step in protecting the privacy of individuals who are asked to present their drivers' licenses or ID cards[.]

19.     In recognition of these concerns about "businesses [] misusing information obtained from a patron['s] Illinois driver's license and identification card," how a "driver's license [is] the most used form of identification, … [requiring] extra steps to protect[,]" and "the privacy of individuals who are asked to present their drivers' licenses or ID cards[,]" (*id.*) the Illinois General Assembly enacted the IICA and IDLA.

20.     The IICA and IDLA, which are near identical (differing primarily with respect to their inclusion of the terms "identification card" and "driver's license," respectively), read as follows:

| 15 ILCS 335/14D ("Illinois Identification Card Act," or "IICA") | 625 ILCS 5/6-117.1 ("Illinois Driver's License Act," or "IDLA") |
| --- | --- |

---

[18] https://www.ilsos.gov/news/2005/february/050202d1.pdf (cleaned up).

[19] https://www.ilsos.gov/news/2006/june/060628d1.pdf.

(a) When information is obtained from an identification card issued by the Secretary of State to identify or prove the age of the holder of the card, or in the course of a commercial transaction, that information may be used only for purposes of identification of the individual or for completing the commercial transaction in which the information was obtained, including all subsequent payment, processing, collection, and other related actions. Information obtained from an identification card issued by the Secretary of State may not be used for purposes unrelated to the transaction in which it was obtained, including, but not limited to, commercial solicitations. Information obtained from an identification card issued by the Secretary of State to identify or prove the age of the holder of the card, or in the course of a commercial transaction, may not be sold, leased or otherwise provided to any third party.[20]

(a) When information is obtained from a driver's license to identify or prove the age of the holder of the license, or in the course of a commercial transaction, that information may be used only for purposes of identification of the individual or for completing the commercial transaction in which the information was obtained, including all subsequent payment, processing, collection, and other related actions. Information obtained from a driver's license may not be used for purposes unrelated to the transaction in which it was obtained, including, but not limited to, commercial solicitations. Information obtained from a driver's license to identify the holder of the license, or in the course of a commercial transaction, may not be sold, leased, or otherwise provided to any third party.

(c) Any individual whose identification card information has been used in violation of this Section has a cause of action against the person who violated this Section. Upon a finding that a violation did occur, the individual whose information was used in violation of this Section is entitled to recover actual damages, but not less than liquidated damages in the amount of $250 for each violation, plus attorney's fees and the costs of bringing the action.

(b) Any individual whose driver's license information has been used in violation of this Section has a cause of action against the person who violated this Section. Upon a finding that a violation did occur, the individual whose information was used in violation of this Section is entitled to recover actual damages, but not less than liquidated damages in the amount of $250 for each violation, plus attorney's fees and the costs of bringing the action.

(d) Use of information contained on an identification card issued by the Secretary of State is not a violation of this Section if the individual whose information has been used gave express permission for that use, or if the information relating to the individual

(c) Use of information contained on a driver's license is not a violation of this Section if (i) the individual whose information has been used gave express permission for that use or (ii) the information relating to the individual was obtained from a source other than the

---

[20] The IICA, unlike the IDLA, defines "information": "(b) As used in this Section, 'information' on an identification card issued by the Secretary of State includes readable text on the face of the card and information encoded or encrypted into a bar code, magnetic strip, or other electronically readable device on or in the card."

was obtained from a source other than the individual's identification card issued by the Secretary of State.

(e) This Section does not apply to any agency of the United States or to the State of Illinois or any of its political subdivisions.

(f) This Section does not apply to the transfer of information to a third party if (i) a federal or State law, rule, or regulation requires that the information be transferred to a third party after being recorded in specified transactions or (ii) the information is transferred to a third party for purposes of the detection or possible prosecution of criminal offenses or fraud. If information is transferred to a third party under this subsection (f), it may be used only for the purposes authorized by this subsection (f).

(g) This Section does not apply to the use of information obtained from an identification card which has been provided by the holder of the card in the course of a potential or completed employment, commercial, business or professional transaction for the purpose of completing written documents including, but not limited to, contracts, agreements, purchase orders, retail installment contracts, buyer's orders, purchase contracts, repair orders, applications, disclosure forms or waiver forms.

individual's driver's license.

(d) This Section does not apply to any agency of the United States, the State of Illinois, or any other state or political subdivision thereof.

(e) This Section does not apply to the transfer of information to a third party if (i) a federal or State law, rule, or regulation requires that the information be transferred to a third party after being recorded in specified transactions or (ii) the information is transferred to a third party for purposes of the detection or possible prosecution of criminal offenses or fraud. If information is transferred to a third party under this subsection (e), it may be used only for the purposes authorized by this subsection (e).

(f) This Section does not apply to the use of information obtained from a driver's license which has been provided by the holder of the license in the course of a potential or completed employment, commercial, business or professional transaction for the purpose of completing written documents including, but not limited to, contracts, agreements, purchase orders, retail installment contracts, buyer's orders, purchase contracts, repair orders, applications, disclosure forms or waiver forms.

**C.** **Veriff Violates Illinois's Identification Card Act and Driver's License Act**

21.     Per the IICA and IDLA, Veriff's use of the information obtained from identification cards and drivers' licenses to "identify or prove the age of the holder of the card" ought to end at the moment Defendant ceases to act "in the course of [the] commercial transaction." 15 ILCS 335/14D(a); 625 ILCS 5/6-117.1(a).  In this instance, the relevant transaction is the onboarding, authentication, identification, and/or age verification that Class

10

Members consented to.

22.     But in clear violation of the IICA and IDLA, Veriff uses Illinoisans' Information

"for purposes unrelated to the transaction in which it was obtained[.]"  15 ILCS 335/14D(a); 625

ILCS 5/6-117.1(a).

23.     Namely, Veriff uses the Information to improve its own products and/or services,

by employing the Information as "training data" for machine learning and/or artificial

intelligence algorithms.  This is confirmed by Veriff's "Privacy Notice,"[21] which states, *inter*

*alia*:

> [W]e may use the above mentioned data, but in particular the End-User's photos and videos
> as well as data extracted from the same, such as face scans and other measurements, and
> other documents … for the provision of the Service and related business purposes, such as
> maintaining, improving, upgrading or enhancing the Service. We do not use such extracted
> data for the purpose of inferring characteristics about you for any other reasons. …
>
> [W]e may process data for the following purposes: … (13) for developing, testing,
> improving and altering the functionality of the Service, including for machine learning (as
> specified in section 6 below), data annotation, testing and training, and producing
> anonymised or anonymised and aggregated statistical reports and research[.] …
>
> It is important that algorithms are built, trained and tested on training sets, which consist
> of real data (see description of data categories above in Section 4.1). All machine learning
> models are highly dependent on the quality of input data. Such processing is only done for
> internal use to improve and develop our services and done only based on the contractual
> mandate received from our Customers under the precondition that a valid legal basis has
> been obtained. …
>
> Veriff stands for the concept that machine learning is conducted in an ethical and
> trustworthy way that respects human rights and freedoms. Machine learning as a tool will
> enable End-Users to receive better, more secure and faster services provided by Veriff's
> Customers and help to prevent and detect fraud. Datasets used to develop, test and train are
> kept in separate, monitored and highly secure data research environments.

24.     Thus, Veriff illegally uses Information for purposes (improving its own

products and/or services, employing the Information as "training data" for its machine learning

---

[21] https://cognitohq.com/privacy-statement.

11

and/or artificial intelligence algorithms) unrelated to the transaction in which the Information was obtained (onboarding, authenticating, identifying, and/or age verifying individual Class Members).

25.     Veriff never requested – nor did Class Members ever provide – express consent (written or otherwise) to: Veriff's use of the Information for purposes unrelated to the transactions in which it was obtained; Veriff's use of the Information as "training data," specifically; or Veriff's privacy-related policies.

26.     Defendant's conduct does not fall within one of the exceptions delineated by the Illinois Identification Card Act and the Illinois Driver's License Act.

27.     Class Members were harmed by Defendant's unconsented use of their Information for purposes unrelated to the transactions in which the Information was obtained.  If Defendant's "training data" were to fall into the wrong hands, by data breach or otherwise, individuals to whom the Information belongs could have their identities stolen or their financial and/or other highly personal accounts breached and used for nefarious purposes.

28.     Indeed, the legislative history of the IICA and IDLA makes clear that both were enacted precisely to "address[] an issue that is of epidemic proportion in this country and in Illinois regarding identity theft… [by] prohibit[ing] the use of driver's license or State ID information for purposes other than those for which it is obtained, for example proof of age."[22]

29.     Veriff was also able to realize significant cost-savings by misappropriating the Information.[23]  The Information was therefore economically valuable.  Through Defendant's actions, Plaintiff and Class Members were deprived of the ability to control (i.e., protect or

---

[22] https://www.ilga.gov/House/transcripts/Htrans94/09400015.pdf at 59 (cleaned up).

[23] *See supra* n.5 ("[O]n average, ML projects need around 100,000 data samples to perform well. … Generating 100,000 data points via Amazon's Mechanical Turk, for example, can cost you around $70,000.").

monetize, at their own discretion) their Information.

**D. Plaintiff Diana Morales' Experience**

30.     Plaintiff Morales interacted with Defendant's software while located in Illinois, in or around July 2023, within a video game called Roblox – which is one of Defendant's many clients.  Plaintiff Morales provided a photo of her Illinois driver's license to Defendant so that "information [] obtained from [her] driver's license [could be used] to identify [her] or prove [her] age [as] the holder of the license, [] in the course of a commercial transaction[.]"  See 15 ILCS 335/14D(a); 625 ILCS 5/6-117.1(a).  Specifically, Plaintiff wished to become a verified user of Roblox.

31.     Once Defendant's AI finished Plaintiff Morales' discrete onboarding, authentication, identification, and/or age verification transaction – allowing Plaintiff Morales to become a verified user of Roblox – "the course of [Plaintiff Morales'] commercial transaction" was complete.  *See* 15 ILCS 335/14D(a); 625 ILCS 5/6-117.1(a).

32.     Still, and despite the IICA's and IDLA's clear restrictions, (*see* 15 ILCS 335/14D(a); 625 ILCS 5/6-117.1(a)), Defendant proceeded to use Plaintiff's Information for an unrelated, unpermitted purpose: to improve Defendant's own products and services.  That is, Defendant used Plaintiff's Information as "training data" for Veriff's machine learning and/or artificial intelligence algorithms.

33.     Defendant's conduct does not fall within any of the exceptions delineated by the Illinois Identification Card Act and the Illinois Driver's License Act.

34.     Veriff never requested – nor did Plaintiff ever provide – express consent (written or otherwise) to: Veriff's use of the Information for purposes unrelated to the transactions in which it was obtained; Veriff's use of the Information as "training data," specifically; or Veriff's privacy-related policies.

35.     By using Plaintiff's Information for "purposes unrelated to the transaction in which it was obtained," 15 ILCS 335/14D(a); 625 ILCS 5/6-117.1(a), Defendant invaded Plaintiff's statutorily protected right to privacy in his Information and harmed Plaintiff.

## CLASS ALLEGATIONS

36.     **Class Definition**: Plaintiff brings this action pursuant to 735 ILCS 5/2-801 on behalf of the following classes of similarly situated individuals (the "Class"):

> All Illinois residents who uploaded a photograph of their Illinois identification card issued by the Secretary of State and/or driver's license to Defendant.

37.     The following are excluded from the Class: (1) any Judge presiding over this action and members of his or her family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parent has a controlling interest (including current and former employees, officers, or directors); (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

38.     **Numerosity**: Pursuant to 735 ILCS 5/2-801(1), members of the Class are so numerous that their individual joinder is impracticable. On information and belief, members of the Class number in the thousands. The precise number of the Class's members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical. Accordingly, utilization of the class action mechanism is the most

economically feasible means of determining and adjudicating the merits of this litigation.

Moreover, the Class is ascertainable and identifiable from Defendant's records.

39.      **Commonality and Predominance**: Pursuant to 735 ILCS 5/2-801(2), common

and well-defined questions of fact and law exist as to all members of the Class and predominate

over questions affecting only individual members of the Class.  These common legal and factual

questions, which do not vary from class member to class member, and which may be determined

without reference to the individual circumstances of any class member include, but are not

limited to, the following:

> (a)      whether Defendant used information obtained from Plaintiff's and
> Class Members' Illinois identification cards issued by the
> Secretary of State and drivers' licenses for purposes unrelated to
> the respective transactions in which said information was obtained,
> including but not limited to as "training data."  *See* 15 ILCS
> 335/14D(a); 625 ILCS 5/6-117.1(a);

> (b)      whether Plaintiff and Class Members gave express permission for
> Defendant to use the information to improve Defendant's own products
> and/or services, by employing the information as "training data" for
> Defendant's machine learning and/or artificial intelligence algorithms.
> *See* 15 ILCS 335/14D(d); 625 ILCS 5/6-117.1(c); and

> (c)      whether the foregoing practices violate the IICA or IDLA.

40.      **Adequate Representation**: Pursuant to 735 ILCS 5/2-801(3), Plaintiff has

retained competent counsel experienced in prosecuting complex consumer class action.  Plaintiff

and her counsel are committed to vigorously prosecuting this class action.  Moreover, Plaintiff

and her counsel are able to fairly and adequately represent and protect the interests of the Class

because their interests do not conflict with the interests of the class members Plaintiff seeks to

represent.  Plaintiff has raised viable statutory claims of the type reasonably expected to be raised

by members of the Class and will vigorously pursue those claims.  If necessary, Plaintiff may

seek leave of this Court to amend this Class Action Complaint to include additional class representatives to represent the Class or additional claims as may be appropriate.

41.     **Superiority**: Pursuant to 735 ILCS 5/2-801(4), a class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable.  Each individual member of the Class may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Moreover, even if every member of the Class could afford to pursue individual litigation, the Court system could not.  It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.  Individualized litigation would also present the potential for inconsistent or contradictory judgments, and it would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.  By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each member of the Class.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.  Plaintiff anticipates no difficulty in the management of this action as a class action.  Class-wide relief is essential to compel compliance with the IICA and IDLA.

## CAUSES OF ACTION

### COUNT I – FOR DAMAGES AGAINST DEFENDANT'S
### VIOLATION OF 15 ILCS 335/14D – MISUSE OF INFORMATION OBTAINED FROM
### AN IDENTIFICATION CARD ISSUED BY THE SECRETARY OF STATE

42.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

43.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

44.     15 ILCS 335/14D(a) mandates that:

> When information is obtained from an identification card issued by the Secretary of State to identify or prove the age of the holder of the card, or in the course of a commercial transaction, that information may be used only for purposes of identification of the individual or for completing the commercial transaction in which the information was obtained, including all subsequent payment, processing, collection, and other related actions. Information obtained from an identification card issued by the Secretary of State may not be used for purposes unrelated to the transaction in which it was obtained[.]

45.     Defendant failed to comply with this IICA mandate.

46.     Thousands of Class Members have provided photographs of their respective Illinois identification cards issued by the Secretary of State to Defendant, so that Defendant could use said information "to identify or prove the age of the holder of the card, or in the course of a commercial transaction[.]"  15 ILCS 335/14D(a).

47.     Once Defendant finished the discrete onboarding, authentication, identification, and/or age verification transactions of particular identification card holders, "the course of [these] commercial transaction[s]" was complete.  *See id.*

48.     Still, and despite the IICA's clear restriction, stating that "[i]nformation obtained from an identification card issued by the Secretary of State may not be used for purposes unrelated to the transaction in which it was obtained," *id.*, Defendant proceeded to use Class Members' information obtained from an identification card issued by the Secretary of State "for purposes unrelated to the transaction in which it was obtained[.]"  *See id.*

49.     Namely, as set out by Defendant's own "Privacy Notice," Defendant uses Class Members' information obtained from an identification card issued by the Secretary of State for purposes (improving Defendant's own products and/or services, by employing the information as

"training data" for Defendant's machine learning and/or artificial intelligence algorithms) unrelated to the transactions in which the information was obtained (onboarding, authenticating, identifying, and/or age verifying individual Class Members).

50.     Defendant's conduct does not fall within any of the exceptions delineated by the Illinois Identification Card Act.

51.     Class Members were harmed by Defendant's use of their Information for purposes unrelated to the transactions in which the Information was obtained (Class Members' own onboarding, authentication, identification, and/or age verification transactions). If Defendant's "training data" were to fall into the wrong hands, by data breach or otherwise, individuals to whom the Information at issue belongs could have their identities stolen or their financial and/or other highly personal accounts breached and used for nefarious purposes. Additionally, Class Members were deprived of the ability to control (i.e., protect or monetize, at their own discretion) their Information.

52.     On behalf of herself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with the IICA's requirements for the use of information obtained from an identification card issued by the Secretary of State; (3) statutory damages of $250 for each violation of the IICA pursuant to 15 ILCS 335/14D(c); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 15 ILCS 335/14D(c).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff on behalf of herself and the proposed Class, respectfully requests that this Court enter an Order:

(a)     Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as the representative of the Class, and appointing Plaintiff's counsel as Class Counsel;

(b)     Declaring that Defendant's actions, as set out above, violate 15 ILCS 335/14D (the "Illinois Identification Card Act" or "IICA");

(c)     Awarding statutory damages of $250.00 for each of Defendant's violations of the IICA, pursuant to 15 ILCS 335/14D(c);

(d)     Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, *inter alia*, an Order requiring Defendant to use Illinois identification card information in compliance with the IICA;

(e)     Awarding Plaintiff and the Class their reasonable attorneys' fees and costs and other litigation expenses pursuant to 15 ILCS 335/14D(c);

(f)     Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

(g)     Awarding such other and further relief as equity and justice may require.

## COUNT II – FOR DAMAGES AGAINST DEFENDANT'S VIOLATION OF 625 ILCS 5/6-117.1 – MISUSE OF INFORMATION OBTAINED FROM ILLINOIS DRIVERS' LICENSES

53.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

54.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

55.     625 ILCS 5/6-117.1(a) mandates that:

When information is obtained from a driver's license to identify or prove the age of the holder of the license, or in the course of a commercial transaction, that information may be used only for purposes of identification of the individual or for completing the commercial transaction in which the information was obtained, including all subsequent payment, processing, collection, and other related actions. Information obtained from a driver's license may not be used for purposes unrelated to the transaction in which it was obtained[.]

56.     Defendant failed to comply with this IDLA mandate.

57.     Thousands of Class Members have provided photographs of their respective Illinois drivers' licenses to Defendant, so that Defendant could use said information "to identify or prove the age of the holder of the license, or in the course of a commercial transaction[.]"  625 ILCS 5/6-117.1(a).

58.     Once Defendant finished the discrete onboarding, authentication, identification, and/or age verification transactions of particular license holders, "the course of [these] commercial transaction[s]" was complete.  *See id.*

59.     Still, and despite the IDLA's clear restriction, stating that "[i]nformation obtained from a driver's license may not be used for purposes unrelated to the transaction in which it was obtained," *id.*, Defendant proceeded to use Class Members' information obtained from a driver's license "for purposes unrelated to the transaction in which it was obtained[.]" *See id.*

60.     Namely, as set out by Defendant's own "Privacy Notice," Defendant uses Class Members' information obtained from a driver's license for purposes (improving Defendant's own products and/or services, by employing the information as "training data" for Defendant's machine learning and/or artificial intelligence algorithms) unrelated to the transactions in which the information was obtained (onboarding, authenticating, identifying, and/or age verifying individual Class Members).

61.     Defendant's conduct does not fall within any of the exceptions delineated by the Illinois Driver's License Act.

62.     Class Members were harmed by Defendant's use of their Information for purposes unrelated to the transactions in which the Information was obtained (Class Members' own onboarding, authentication, identification, and/or age verification transactions).  If

Defendant's "training data" were to fall into the wrong hands, by data breach or otherwise, individuals to whom the Information at issue belongs could have their identities stolen or their financial and/or other highly personal accounts breached and used for nefarious purposes. Additionally, Class Members were deprived of the ability to control (i.e., protect or monetize, at their own discretion) their Information.

63.     On behalf of herself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with the IDLA's requirements for the use of information obtained from a driver's license; (3) statutory damages of $250 for each violation of the IDLA pursuant to 625 ILCS 5/6-117.1(b); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 625 ILCS 5/6-117.1(b).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff on behalf of herself and the proposed Class, respectfully requests that this Court enter an Order:

       (a) Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as the representative of the Class, and appointing Plaintiff's counsel as Class Counsel;

       (b) Declaring that Defendant's actions, as set out above, violate 625 ILCS 5/6-117.1 (the "Illinois Driver's License Act" or "IDLA");

       (c) Awarding statutory damages of $250.00 for each of Defendant's violations of the IDLA, pursuant to 625 ILCS 5/6-117.1(b);

       (d) Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, *inter alia*, an Order requiring Defendant to use Illinois driver's license information in compliance with the IDLA;

(e) Awarding Plaintiff and the Class their reasonable attorneys' fees and costs and other litigation expenses pursuant to 625 ILCS 5/6-117.1(b);

(f) Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

(g) Awarding such other and further relief as equity and justice may require.

### **JURY TRIAL Demanded**

Plaintiff demands a trial by jury for all issues so triable.

Dated:  June 27, 2024                    Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Philip L. Fraietta*

Philip L. Fraietta (ARDC No. 6337165)
Matthew Girardi (*Pro Hac Vice Forthcoming*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
E-Mail: pfraietta@bursor.com
            mgirardi@bursor.com

*Counsel for Plaintiff and the Putative Class*